## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Kaizen International, LLC, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| Jawbone Health Hub, Inc., | |
| Defendant. | |

## COMPLAINT

1.      This is a breach of contract action. Kaizen International, LLC ("Kaizen") entered contracted to perform consulting services for Jawbone Health Hub, Inc. ("Jawbone").  Kaizen timely and fully performed those services and invoiced for them.  Jawbone benefited from those services, received the invoices, but has paid virtually none of them.  Jawbone is in breach and owes Kaizen at least $2.5 million dollars plus interest, along with stock options.

## PARTIES

2.      Plaintiff Kaizen International, LLC is a limited liability company organized in Wyoming with its principal place of business in Buffalo, Wyoming.

3.      Kaizen has two members, Curtis Cronin and John Joseph.  Mr. Cronin resides in San Carlos, California.  Mr. Joseph resides in Dallas, Pennsylvania.

4.      Defendant Jawbone Health Hub, Inc. is a corporation that is organized under the laws of Delaware and domiciled in Delaware.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between Kaizen and Jawbone, and the

amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Jawbone because it is an entity organized under the laws of Delaware and domiciled in Delaware.

7.      Pursuant to 28 U.S.C. §1391(b)(1), venue is proper in this District because defendant Jawbone is a Delaware resident.

## THE PARTIES' CONTRACT

8.      On March 28, 2018, Kaizen and Jawbone executed a written contract for the performance of Kaizen's services to Jawbone (the "Contract").  The parties agreed that Kaizen would partner with Jawbone on an intensive basis to create organizational clarity and purpose, and build an organization that could adapt and innovate more rapidly than the market. Specifically, the parties agreed that Kaizen would: a) align Jawbone's leadership team to operate around Jawbone's vision, mission, and purposes; b) align Jawbone's organization with the goals established by leadership to ensure they could meet and match current and predicted critical path priorities for Jawbone's new product; and c) partner with Jawbone's leadership and teams within the organization to build a culture of innovation and execution with the skills to achieve the company's initiatives.

9.      The agreed start date of the parties' Contract was March 5, 2018, which was the date on which Kaizen began performing its work for Jawbone.

10.     Since March 5, 2018, Kaizen has fully performed its obligations under the Contract. Kaizen completed the discovery phase of the Contract and identified areas of misalignment between Jawbone's leadership and the team that were preventing execution of the product development strategy. After identifying areas of misalignment, Kaizen provided in-depth, intensive executive coaching and Navy SEAL resiliency training to Jawbone's CEO, Hosain

Rahman, as well as other executives and managers in the organization. Kaizen's extensive executive coaching included round-the-clock text, phone, and e-mail availability to C-suite executives, which Mr. Rahman (among others) took advantage of on a near-daily basis. In identifying and correcting misalignments within the organization, Kaizen drove the delivery of Jawbone's first minimum viable product.

11.     Further, Kaizen led weekly cadence meetings and facilitated leadership meeting preparations to help Jawbone align the members of its team in order to identify and act on current and predicted critical path priorities. Kaizen also partnered with Jawbone to set the foundation for a culture of innovation and execution by leading Jawbone's preparations for major external speeches and presentations that would generate product interest and financing, including the Dream Force event in San Francisco.

12.     Pursuant to the Contract, Jawbone agreed to pay Kaizen $200,000 each month for Kaizen's services for a period of 24 months, plus a one-time grant of a non-qualified option for Kaizen to purchase 55 basis points of Jawbone's common stock.

13.     Under the Contract, Jawbone and Kaizen agreed that Kaizen's expenses would be invoiced monthly as actually accrued, and Jawbone's payments would be due immediately upon receipt of the invoice. Any amounts due which remained outstanding after 10 days from the invoice date will accrue interest daily at a rate of 2% per month.

14.     Jawbone and Kaizen further agreed that Jawbone would pay Kaizen $250,000 per month (instead of $200,000) in the event Jawbone's Board of Directors did not approve Kaizen's stock purchase option.

15.     In addition, the parties agreed that either Party could terminate the Contract at will upon 30 days' written notice.

16.     Kaizen fully performed all of its obligations under the Contract from its inception.

17.     Kaizen submitted invoices to Jawbone monthly for the contractually-agreed monthly fee, plus expenses.

18.      Since March 5, 2018, Kaizen has invoiced a total of $3,000,000 in fees, plus $275,093.69 in expenses, for a total billed amount of $3,275,093.69.  Jawbone has never disputed or contested any of the amounts billed.

19.     Jawbone has paid only a total of $700,000 in invoiced fees, plus $101,716.48 in invoiced expenses, since March 2018.  Thus, $2,300,000 in invoiced fees, and $173,377.21 in invoiced expenses, remain outstanding and unpaid.  Because many of those invoiced expenses are more than 10 days old, Jawbone also owes 2% interest accrued daily beginning on the 10th day after each invoice month for such expenses.

20.     Jawbone, through its CEO, Mr. Rahman, repeatedly represented that Jawbone would reimburse Kaizen's outstanding invoices in full and ensure that Kaizen was "made whole" for what Mr. Rahman characterized as Kaizen's "extraordinary and unprecedented" sacrifice and commitment in its work with Jawbone.  However, after April 15, 2019, Jawbone reversed course.  Mr. Rahman and Jawbone have refused to pay the nearly $2.5 million, plus interest, in remaining invoiced amounts owed to Kaizen.

21.     On April 24, 2019, Kaizen demanded payment of the amounts invoiced and outstanding to Jawbone.  Jawbone has not paid any of those amounts outstanding.  Instead, Jawbone terminated the Contract on April 24, 2019.  Jawbone thus will owe Kaizen any expenses incurred before the termination date and as a result of the termination, in addition to the outstanding invoice amounts.  Moreover, to the extent that Jawbone's board does not approve Kaizen's stock

- 4 -

option purchase, Jawbone will owe an additional $50,000 per month from March 2018 through May 29, 2019 – *i.e.*, $750,000.

## COUNT ONE
## BREACH OF CONTRACT

22.  Kaizen incorporates and realleges Paragraphs 1-21 of this Complaint as though fully set forth herein.

23.  Kaizen and Jawbone entered into a valid written contract on March 28, 2018.

24.  Kaizen has fully performed all of the services required by the parties' contract.

25.  Kaizen has submitted monthly invoices to Jawbone since the contract's inception for a total of $3,000,000 in fees, plus $275,093.69 in expenses, for a total billed amount of $3,275,093.69.

26.  To date, Jawbone has only paid a small fraction of the invoiced amounts, consisting of $700,000 for invoiced fees, plus $101,716.48 in invoiced expenses.

27.  Jawbone has breached the parties' contract by failing to pay the amounts owed to Kaizen under the undisputed invoices, and it continues to be in breach.

28.  As a result of Jawbone's breach, Kaizen has suffered contractual damages, consequential and incidental damages, and incurred attorneys' fees, expenses, and now court costs in attempt to collect the undisputed amounts that are owed by Jawbone.

## COUNT TWO
## UNJUST ENRICHMENT

29.  Kaizen incorporates and realleges Paragraphs 1-28 of this Complaint as though fully set forth herein.

30.  Since March 5, 2018, Kaizen has conferred significant benefits on Jawbone through the services described in Paragraphs 10 and 11, above.  Jawbone voluntarily accepted and retained the benefits that Kaizen conferred.

31.     Jawbone, through its CEO, Mr. Rahman, repeatedly acknowledged the benefits that Kaizen conferred to Jawbone, and Jawbone repeatedly represented that Kaizen would be "made whole" for its efforts.

32.     Nevertheless, Jawbone has failed to make Kaizen whole for what Jawbone itself characterized as Kaizen's "unprecedented and extraordinary" sacrifice on Jawbone's behalf.  The circumstances render Jawbone's retention of those benefits inequitable unless Jawbone pays Kaizen for the value of those benefits.

33.     Jawbone has been unjustly enriched at Kaizen's expense, and Kaizen has been unjustly deprived.  Kaizen thus is entitled to compensation and damages as a result of Jawbone's unjust enrichment.

**PRAYER FOR RELIEF**

WHEREFORE, Kaizen respectfully requests that this Court enter an order of judgment against Jawbone, as follows:

1.  Finding that Jawbone breached its contract with Kaizen by failing to pay amounts owed and invoiced to Jawbone for work performed by, and associated expenses plus interest incurred by, Kaizen;

2.  For damages, including all compensatory, consequential, and incidental damages, plus statutory interest, arising out of Jawbone's breach of contract;

3.  For damages arising out of Jawbone's unjust enrichment through its retention of the significant benefits conferred by Kaizen without adequately compensating Kaizen for the value of those benefits; and

4.  Kaizen's attorneys' fees, reasonable costs of suit, and such other or further relief as the Court deems proper.

JURY DEMAND:  Plaintiff hereby demands trial by jury of all issues so triable.


Dated:  May 2, 2019                                By: /s/ *John S. Spadaro*
                                                                                                    
                                                             John S. Spadaro
                                                             John Sheehan Spadaro LLC
                                                             54 Liborio Lane
                                                             P.O. Box 627
                                                             Smyrna, DE 19977
                                                             Telephone: (302) 235-7745

                                                             -and-

                                                             Jack Thomas, N.Y. Bar No. 2824423
                                                             Leslie A. Davis, D.C. Bar No. 481138
                                                             TROUTMAN SANDERS LLP
                                                             875 Third Avenue
                                                             New York, NY  10022
                                                             Telephone:   212.704.6000
                                                             Facsimile:   212.704.6288

                                                             *Attorneys for Plaintiff*
                                                             *Kaizen International, LLC*